UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JAMES COMPTON | § | NO. 2:17-CV-2258 SECTION M (4) |
| VERSUS | § | MAG. JUDGE KAREN WELLS ROBY |
| MONCLA OPERATIONS, L.L.C. | § | JUDGE BARRY W. ASHE |

---

**MEMORANDUM IN SUPPORT OF MOTION *IN LIMNE***
**TO EXCLUDE PROPOSED EXPERT TESTIMONY OF GREGG S. PERKIN**

Defendant, Moncla Marine Operations, L.L.C. ("Moncla"), submits this memorandum in support of its motion *in limine* requesting this Honorable Court to exclude the proposed testimony of expert witness, Gregg S. Perkin ("Perkin"), offered by Plaintiff, James Compton. Plaintiff alleges that he was injured when he was struck by a piece of equipment which fell from above as he was working on the rig floor of the Moncla drilling barge. Perkin' s report, like many of his other reports that have been excluded in this and other Districts and courts, merely provides a lengthy recitation of the facts, a cursory conclusion that Moncla was at fault, and no analysis whatsoever tying the foregoing together.

Perkin fails to apply any reliable analysis in reaching his opinions. His reliance on facts not in evidence also makes his opinions irrelevant. Finally, he is also unqualified to opine on the issues at hand. Therefore, Moncla requests that this Court exclude Perkin's testimony under the *Daubert* standard.

## I. THE INCIDENT

The Moncla 103 is a workover barge operated by Moncla. At the time of the incident, it was conducting remedial well operations in Lake Raccourci in Lafourche Parish. The well in

question had been run over by a tugboat and damaged, and was in the process of being plugged and abandoned (P&A'd). The Moncla 103 arrived on location on the morning of February 25, 2016, at which time the rig was rigged up and well operations began. This fishing operation (attempting to recover damaged pipe from the wellbore) continued and was in progress at the time of the incident.

On the 28th of February, 2016, the Moncla evening tour (18:00 – 06:00) crew, of which Plaintiff was a floorman, began their work for the evening. (Ex. A – IADC Report dated 2/28/16). Standard practice in the oilfield, when a crew comes on tour, is that the first task is to "service the rig." This includes, but is not limited to, lubricating and inspecting the rig equipment to ensure it is ready for use and in good working condition. (Ex. B – Dennis Fontenot depo., pp. 9-10). On this day, this task was delayed for a few hours due to the hazards associated with the ongoing operation (wireline work) when the shift started. After wireline operations had been concluded and rigged down, the rig equipment was serviced and checked, prior to rigging up a piece of equipment referred to as a power swivel. (*Id.*, at 16). According to the depositions of Mr. Dwayne Edmond (Moncla's driller) and Mr. Dennis Fontenot (another Moncla floorman), the "catline" (a hydraulic winch operated by the driller) was inspected by Plaintiff and the "air hoist" was inspected by Mr. Fontenot prior to rigging up the power swivel. (Ex. B – p. 16; Ex. C – Dwayne Edmond depo., p. 63).

After the power swivel was rigged up, a fishing tool assembly consisting of a washover shoe, pipe cutter, and washpipe was made up and run in the hole to a depth of 162'. Washover operations commenced at that depth. As the tools got deeper in the hole, additional tubing had to be added to the string to allow operations to continue and go deeper in the well. The process of adding another joint of tubing to the string is called "making a connection." On the Moncla 103, the process of making a connection entailed disconnecting the power swivel from the

string in the hole, connecting it to an additional joint stored nearby in the V-door, and picking up and connecting the new joint to the pipe in the hole. As the power swivel hangs directly over the hole and is secured there by cables, when connecting to the pipe in the V-door, the power swivel must be tilted to ensure that the connections are aligned correctly as not to damage the threads during the makeup process.

The procedure on the Moncla 103 was to utilize both the "catline" to tilt the power swivel toward the pipe in the V-door and an "air hoist" (an air winch operated by one of the floormen) to pull the joint of tubing in from the V-door to line up and engage the power swivel. After this joint is made up to the power swivel, the assembly is picked up and made up to the string in the hole. Washing over continued to a depth of 262' where a connection was to be made. The power swivel was shut down, disconnected from the string and when the driller engaged the catline to tilt the power swivel toward the V-door, the counterweight/swivel from the catline assembly fell, striking Mr. Compton. (Ex. A). Shortly thereafter Mr. Compton was transported by a Moncla crewboat to the dock at Leeville, Louisiana, where he was met by EMS and transported for treatment at a local hospital.

In his Complaint, Plaintiff alleges Moncla:

- Failed to provide a safe place to work;
- Failed to properly train and supervise Plaintiff;
- Failed to take any means or precautions for the safety of Defendant's employees, including Plaintiff ;
- Failed to provide minimum safety requirements;
- Failed to provide adequate equipment for the job in question; and
- Failed to provide adequate personnel for the job in question.

(R.Doc. 1).

## II. PERKIN'S REPORT

Plaintiff has designated Perkin to testify as a "safety expert." (R.Doc. 43 – p. 6). Perkin's report begins with a section entitled "Methodologies Utilized." (Ex. D – Perkins' report, p. 1). In that section it provides:

> …this First Report is limited to the discussions specifically presented. The methodologies used to forth them were based upon an analytical approach to investigating incidents and equipment failures which are recognized and accepted in the engineering, scientific and safety communities.

(*Id.*) However, no further mention of these "methodologies" is made anywhere else in the report, much less explained.

Perkin next notes that he put together an "incident sequence", which is nothing more than a chronology of events, "in order to determine certain causal factors pertaining to this matter." (*Id.*). However, no analysis is provided explaining how he came to any such determinations.

Perkin then notes that "[c]ertain discussions, analysis, examinations and/or evaluations expressed in" his report "may have been based upon recognized engineering and safety doctrines and/or practices, established texts, industry standards, accepted specifications, recommended practices, testing and evaluation methodologies and procedures and other information which are available in the public domain." (emphasis added). (*Id.*, p. 2). This of course clearly indicates an absence of reliability. Perkin then references his "experience as a registered Professional Engineer in the States of Louisiana and Texas and eleven (11) other states." (*Id.*). However, no experience of working in the oilfield on a drilling or workover rig is referenced. Nor is any such experience referenced in his *curriculum vitae*. (Ex. E).

Following a list of information he reviewed, Perkin spends the next thirty-five (35) pages of the thirty-seven (37) page report setting forth a description of the accident and a simple chronology. Scattered throughout these pages are references to how an operation is generally conducted with heavy use of graphics pasted from Internet content, or from file forms in other cases, to explain to the reader how these operations are conducted. Several of these pages are used to illustrate and discuss basic drilling rig equipment and nomenclature. Often, his discussions and illustrations do not correspond with the actual equipment utilized or operations conducted in this matter.

Perkin's purported opinions comprise only approximately two pages of his report. First, Perkin concludes that Plaintiff was not at fault in connection with his accident. (Ex. D – p. 38). This is the first reference to this topic and Mr. Perkin fails to explain at all how he has reached this conclusion.

Perkin next writes:

> Without better evidence of how the Catline was actually configured in the Mast and/or without a proper inspection of the Catline and its rigging components, I am unaware of the exact circumstance which allowed the Counterweight to fall to the Rig Floor and strike Mr. Compton. However, based on my education, training and experience, there are several possibilities which could have resulted in the Counterweight falling to the Rig Floor; poor maintenance/inspection of the Catline and its rigging, improper make-up of the Catline's rigging equipment, and/or the Catline and/or its components being in a bind and/or being over-pulled resulting in the Catline's component's failure;

(*Id.*). Again, Mr. Perkin fails to explain at all how he has reached these "conclusions," which he more accurately portrayed as "possibilities."

Perkin next sets forth the generalization that Moncla "should have ensured that they provided a safe place to work for its employees" and "should have ensured that its hoisting and rigging lines and/or equipment were properly configured and fit for purpose." (*Id.*). Finally,

Perkin notes that it is his opinion that Moncla could have used a simpler and safer method of conducting the operations in question. (*Id.*, p. 39).

## III. LAW AND ARGUMENT

### A. Perkin's Report Fails the *Daubert* Test Because it is Neither Relevant nor Reliable.

Admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 is applied under the analytical framework established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), which requires testimony to be both relevant and reliable. *Id.* at 589. "Expert testimony is relevant under *Daubert* if it assists the trier of fact in understanding the evidence." *Howard v. Cal Dive Intern., Inc.*, 2011 WL 63873, at *2 (E.D. La. 2011) (Zainey, J.). Determining whether testimony is reliable requires a district court, acting as gatekeeper, to assess "whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Id.*

The Court's essential responsibility in determining reliability is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practices of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167 (1999). In evaluating an expert's testimony, the court should consider whether his theory or technique:

(1) can be or has been tested;
(2) has been subjected to peer review and publication;
(3) has a known or potential rate of error or standards controlling its operations; and
(4) is generally accepted in the relevant scientific community.

*Id.*

As explained further below, Perkin' s proposed testimony is not reliable because his conclusions are not tied to his purported methodology by any analysis. Perkin's proposed testimony is not relevant because his opinions refer to facts not in evidence.

**B. Perkin's Proposed Testimony Is Not Reliable under *Daubert.***

Perkin's opinions do not meet the criteria for admissibility under *Daubert*, as outlined above. According to *Daubert*, there must be a preliminary assessment of whether the proffered testimony is based on methods or reasons which are scientifically valid, and an assessment of whether the methods or reasoning can properly be applied to the facts of a particular case. *Daubert*, at 594. The point is to exclude expert testimony that is based solely on subjective belief or unsupported speculation. *Id.*

Perkin's opinions contained in his report have not been tested or subjected to peer review. As set forth above, Perkin's report contains nothing more than a laundry list of allegations that are general and conclusory; offer no methodology or reasoning to support the speculative and conclusory opinions; and fail to identify the particular action or inaction that is being criticized, and should be excluded for that very reason.

Perkin provides no research, investigation, study, analysis, drawings, calculations, tests or documentation to support his assertion that Moncla's actions or inactions were inappropriate. In fact, he completely ignores the fundamental cause of this incident - specifically that Plaintiff personally failed to properly inspect the catline assembly as required before it was put in use.

The Fifth Circuit has previously held that the existence of sufficient underlying facts upon which an expert can base his opinion and reliable methodology are, in all instances, mandatory requirements for admission of expert testimony. Without more than credentials and a subjective opinion, an expert's testimony is inadmissible. *Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007). Further, the failure to consider and exclude other potential causes of Plaintiff's accident, before offering an opinion, renders testimony unreliable. In *McNabney v. Lab. Corp. of America,* the plaintiff's causation expert failed to exclude other possible causes of his injury. 153 F.App'x 293, 295 (5th Cir. 2005); Fed.R.Evid. 702. There, the Fifth Circuit held that the expert's failure to consider and exclude other potential causes of plaintiff's injury, before offering an opinion, rendered the testimony unreliable.

In the instant case, Perkin's testimony is inadmissible under *Daubert* because it is unreliable, irrelevant, incomplete and speculative. The same reasons have previously excluded Perkin from testifying on several occasions. This very Court has previously excluded proposed testimony by Perkin due to its lack of reliability. *See* Ex. F, Order dated August 24, 2010 in *"James Lindsay v. Diamond Offshore Management Company,"* Civil Action No. 09-6437 (Lemelle, J.)("A 'safety expert' that merely offers common sense evaluation or, worse, legal theory and conclusions improperly intrudes upon the obligations of the trier of fact and judge. Moreover, the opinions of this witness will not aid the fact finder at trial."). *See also* Ex. G, order issued on December 18, 2009 in "Bobby Smith v. Ideal Industries, Inc.," Civil Action No. 08-5169 (Engelhardt, J.)(granting motion to exclude Perkin's expert report). Likewise, Judges of the United States District Court for the Western District of Louisiana have found Perkin's opinions to be lacking in the reliability necessary for admission into evidence. *See* Ex. H, Ruling on Motions in Limine dated January 30, 2006 in matter entitled "*Jason Peppers v. Aries Marine Corp., et al.*," U.S. District Court for the Western District of Louisiana, Civil Action

No. 04-2356, p. 6 (Hayes, J.)("Plaintiff has not shown by a preponderance of proof that Perkin's opinion that the BOP was top heavy, defective and unreasonably dangerous is reliable. Perkin's opinions are made in a conclusory manner and not based upon scientific evidence or methodology. ... Perkin may be qualified to testify as an expert, but that alone does not make his opinions reliable").

Also, attached to this motion as Exhibit I is a list of nearly twenty (20) other cases in which Perkin's testimony was struck or received some other negative treatment. Indeed, some of the phrases recently used by courts to describe him or his testimony include "not qualified," "not a credible witness," "misleading," and "his testimony was based on so many incorrect assumptions" and contained "several significant inconsistencies. " *In re BP p.l.c. Sec. Litig.*, No. 4:10-MD-2185, 2016 WL 3090779, at *2 n. 20 (S.D. Tex. May 31, 2016); *In re ATP Oil & Gas Corp.*, No. 12-36187, 2015 WL 4381068, at *27-31 (Bankr. S.D. Tex. July 15, 2015).

And as these quotes and the attached list of cases show, Perkin regularly attempts to opine about matters he is not qualified to address, to encroach upon legal issues reserved for the court, to offer inconsistent testimony or positions, and to rely on inaccurate data and offer conjecture in an effort to legitimatize his clients' views of a case. He is guilty of all this and more here, and as a result, he should not be allowed to testify at trial. Accordingly, this Honorable Court should exclude the testimony of Perkin as unreliable and speculative.

**C. Perkin's Proposed Testimony is Not Relevant.**

Attached as Exhibit J is the liability expert report of Steven Goerner, who has been retained by Moncla. At pages 26 to 29 of his report, he points out the number of ways in which Perkin's report references certain methods of operations which were in no way similar to the operations being conducted at the time of Plaintiff's accident. This inaccurate data and basis for

Perkin's opinions renders Perkin's conclusions irrelevant, and for this additional reason, Perkin's testimony should be excluded.

**D. Perkin is not qualified to testify about how workover rig operations should be conducted.**

An expert's qualifications must match the subject matter of his testimony, and where that is not the case, his testimony should be excluded. *Gayton v. McCoy,* 593 F.3d 610, 617 (7th Cir. 2010). Perkin is often excluded for outpacing his actual expertise,[1] and here, nothing in his report or disclosures remotely suggests he is competent to testify about reasonable workover rig operations generally, or more importantly, fishing operations specifically, in any way.

Perkin is not a petroleum engineer or an operations expert. He does not operate oil and gas wells, and he has never worked for a company that operated oil and gas wells. He has never worked on a workover rig crew; he has never been responsible for overseeing any type of workover rig job. Despite this, Perkin is presented as an expert in this case on the cause of, responsibility for, and safe means of avoiding the accident in question, even to the point of opining on the appropriate method of conducting the job, the parties' respective duties, and due diligence during the subject operations. Perkin is in no way qualified to opine on topics such as these.

## III. CONCLUSION

Perkin' s proposed testimony is unreliable and irrelevant because his cursory conclusions are not connected to his purported methodology. He is also unqualified to offer the opinions submitted. Accordingly, Moncla respectfully requests that his proposed testimony be excluded, in its entirety.

---

[1] See, e.g., Perkin Exclusions (Ex. I), at examples 1-3.

Respectfully submitted:

ALLEN & GOOCH
A Law Corporation

*/s/Cade Evans*______________________________
CADE EVANS/24405
RANDALL K. THEUNISSEN/12727
ALAN J. MECHE/30631
P.O. Box 81129
Lafayette, LA 70598-1129
Telephone: 337-291-1660
Fax: 337-291-1665
Email: CadeEvans@AllenGooch.com
Email: RandyTheunissen@AllenGooch.com
Email: AlanMeche@AllenGooch.com
Attorneys for Moncla Marine Operations, L.L.C.