UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JAMES COMPTON | * | NO: 17-2258 |
| | * | |
| VERSUS | * | SECTION: M |
| | * | JUDGE BARRY W. ASHE |
| MONCLA COMPANIES, LLC | * | MAGISTRATE: 4 |
| | * | JUDGE KAREN WELLS ROBY |

****************************************************************************

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION IN LIMINE TO EXCLUDE PROPOSED EXPERT TESTIMONY OF GREGG S. PERKIN**

MAY IT PLEASE THE COURT:

Plaintiff, James Compton, respectfully requests that the Motion in Limine to Exclude the Proposed Expert Testimony of Gregg Perkin (R. Doc. 46) filed by Defendant, Moncla Marine Operations, L.L.C. be denied, in its entirety. For the reasons set forth herein, Plaintiff avers that Mr. Perkin is more than qualified to render opinions in this matter and has used commonly accepted methodologies to arrive at his opinions. His testimony will be of great help to the jury in this case, as they are likely very unfamiliar with the oilfield operations occurring at the time of Mr. Compton's injury.

## FACTUAL BACKGROUND

This is a case involving very severe injuries caused by a falling object from a drilling rig mast in February 2016. On February 29, 2016, Mr. Compton was working as a floorhand on Moncla Rig 103. On the day of the injury, the power swivel was rigged up to make connections with the downhole equipment, and being moved by the cat line. As the driller, Dwayne Edmonds, was in the drill shack maneuvering the cat line, he heard a whistling noise and the next thing anyone knew, Mr. Compton was struck in the head by a falling object.[1] Mr. Compton had been

[1] Deposition of Dwayne Edmonds, attached as Exhibit 1, at p. 51.

standing near the power swivel and was wearing a hard hat at the time this happened.[2] However, the item (later identified as the counterweight on the cat line) fell at such a force that it hit Mr. Compton in the head, indented the hard hat, and knocked him down.[3] Under the hard hat that Mr. Compton was wearing was a significant cut, and the workers noted that he was bleeding from his head shortly after the accident.[4] Mr. Compton does not recall exactly what happened in the minutes that followed, only that he was ultimately taken into shore for medical treatment.[5]

The crew on Rig 103 reportedly determined itself that the shackle attaching the counterweight to the cat line had failed, and that the cotter pin securing the bolt in place in the shackle had backed out.[6] However, the crew made no effort to preserve any of these items, or take any photographs of the items which broke or needed to be repaired. They simply put the counterweight and cat line assembly back together on the following shift, and continued with the work on the rig.[7]

There are significant questions about whether the company or crew had adequate inspection policies or measures in place to prevent something like this from happening. When an independent safety investigator came out to Rig 103 the following day, documents evidencing the rigging inspections and frequency thereof could not be located. That investigator, Grant Guidry, noted in his own report that the lack of proper inspections of the rigging equipment and documentation showing inspections of the rigging equipment likely contributed to the event occurring.[8]

---

[2] Deposition of Dennis Fontenot, attached as Exhibit 2, at p. 21.
[3] Edmond Dep. at pp. 69-70; Deposition of James Compton, attached as Exhibit 3, at pp. 239-240.
[4] Edmond Dep. at pp. 66, 69-70.
[5] Compton Dep. at pp. 241-42.
[6] Edmond Dep. at p. 74.
[7] Deposition of Jimmie Lopez, attached as Exhibit 4, at pp. 33-34.
[8] Guidry Inspection Notes, attached as Exhibit 5.

In his deposition, Mr. Guidry testified that he was later shown documents which purported to show the inspections at the Moncla office several days after he issued his initial report condemning the company for a lack of proper inspections, although questions about the timing of their production even to the independent investigator remain.[9]

This is not a job or task with which the average juror will have knowledge. Thus, Plaintiff retained several experts, one of whom has a long history and experience in the oil and gas field. Mr. Perkin has many years of experience in both onshore and offshore production operations. Mr. Perkin's CV clearly states he has worked as a Roughneck, Derrickman, Serviceman, and Field Engineer.[10] While employed in the industry as both a Serviceman and Field Engineer, and also as an independent mechanical engineering consultant, Mr. Perkin has worked at and on numerous workover rigs and well servicing operations.[11] Indeed, Moncla itself has retained Mr. Perkin as an expert in a case involving wireline operations on one of its workover rigs in the past, including while this case was pending.[12]

Gregg Perkin has opined that a lack of proper inspection of the rigging equipment used on the power swivel is the most likely contributor to this incident. In rendering that opinion, he reviewed and analyzed all the facts and evidence provided to him by Plaintiff, including deposition testimony, all available documentation from the rig, and conversations with Mr. Compton.[13] Mr. Perkin further relied upon industry customs, practices and procedures with which he is very familiar to render his opinions. This is the same "Methodology" used by Defendant's Expert, Mr. Steven Goerner.[14]

---

[9] Deposition of Grant Guidry, attached as Exhibit 6, at pp. 42-43.
[10] Perkin CV, attached as Exhibit 7, at p. 1.
[11] Id.
[12] *Cabot Oil and Gas Corp. v. Moncla E-Line*, W.D. Tex. Case No. 5:17-cv-00487.
[13] Report of Gregg Perkin, attached as Exhibit D to Moncla's Motion (R. Doc. 46-5), at p. 40.
[14] Goerner Report, attached as Exhibit J to Moncla's Motion (R. Doc. 46-11).

While the driller, Mr. Edmond, said that Mr. Compton was in charge of inspecting the cat line connection before the drilling operations were slated to begin, but Mr. Perkin has said that there is no fault on Mr. Compton for the failure of the cat line on Rig 103.[15] The failure likely occurred far above the connection which Mr. Compton was allegedly required to complete, and Moncla failed to have adequate measures in place to make sure the higher connections on the rig mast were in good condition for operation.[16] Ultimately, the failure to have such measures in place led to the failure of the workers to even note that the cotter pin connecting the shackle to the counterweight was loose or close to backing out, resulting in the break which caused this item to fall on Mr. Compton's head from at least 20 feet above him.

## LAW AND ARGUMENT

### A. The Applicable Standards Regarding Expert Testimony.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case.

Trial courts have wide latitude in determining whether an expert meets the requirements of Federal Rule of Evidence 702 and that discretion "will not be disturbed on appeal unless it is manifestly erroneous."[17] The deferential abuse-of-discretion standard applies to the qualifications and reliability of an expert.[18]

---

[15] Perkin Report (R. Doc. 46-5) at p. 38.
[16] Id. at p. 37.
[17] *Roman v. Western Mfg., Inc.*, 691 F.3d 686 (5th Cir. 2012) (*citing United States v. Valencia*, 600 F.3d 389, 423 (5th Cir. 2010)).
[18] *Whitehouse Hotel Ltd. P'ship. v. Comm'r.*, 615 F.3d 321, 330 (5th Cir. 2010).

The U.S. Supreme Court has instructed trial courts to act as "gate-keepers" to ensure that proffered expert testimony is both relevant and reliable.[19] In order to admit expert testimony, courts must determine "whether the expert is proposing to testify to: (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."[20] Both prongs must be met before the proffered testimony may be admitted.[21]

The first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology.[22] In determining the reliability of an expert, the court must focus solely on the principles and methodology and not the conclusions they generate.[23] Several factors should be considered when determining the soundness of an expert's methodology, including: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique used has been generally accepted; (3) the known or potential rate of error of the technique or theory when applied; and (4) whether the theory or technique used has been generally accepted.[24]

These factors are non-exclusive; rather they are a flexible test in ascertaining the validity and reliability of the methodology the expert employed.[25] The applicability of each factor depends on the particular facts of a case.[26] Courts have also found other factors important in determining whether expert testimony is sufficiently reliable such as if the expert is "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying."[27] Indeed, "[i]f the witness is relying solely or primarily on experience, then the witness must explain

---

19 *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).
20 *Id.*
21 *Id.*
22 *Id.*
23 *Id.*
24 *Morris v. Liberty Mut. Ins. Co.*, 2011 WL 317741 (E.D. La. 2011).
25 *Id*. (*citing Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)).
26 *Id.* (*citing Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)).
27 FRE 702 Advisory Committee Notes, 2000 Amendments.

how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[28] "No one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."[29]

The second prong of *Daubert*, whether the proposed testimony assist the trier of fact in understanding a fact in issue, goes primarily to the issue of relevancy.[30] The *Daubert* Court described this examination as a question of whether the expert testimony proffered is sufficiently tied to the facts of the case such that it will aid the fact finder in resolving a factual dispute.[31] In relation to an argument that an expert should be excluded because he will not assist the trier of the fact, the Advisory Committee Notes to F.R.E. 702 state that "[w]hether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier." Moreover, the Fifth Circuit has made it clear that expert testimony should only be excluded if the court finds that "the jury could adeptly assess [the] situation using only their common experience and knowledge."[32] "There is no more a certain test for determining when experts may be used than the commonsense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."[33]

The intent behind F.R.E. 702 and *Daubert* is to make it easier to secure expert testimony. It is not supposed to be used as a sword but as a shield. As the Advisory Committee Notes to F.R.E. 702 further point out:

---

28 *Id.*
29 *Kumho Tire Co.*, 119 S.Ct. at 1178 (1999).
30 *Morris*, at *2 (*citing Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)).
31 *Id.*
32 *Peters v. Five Star Marine Serv.*, 898 F.2d 448 (5th Cir. 1990).
33 *Paster v. Ingram Barge*, 2015 WL 3680700 (E.D.La. 2015) (*citing* Fed.R.Evid. 702, Advisory Committee Note.)

> [a] review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a "sea change over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.[34]

Courts are to balance the benefit the jury will get by hearing expert testimony against the harm or confusion that might result if the testimony is not reliable. "When opinions are excluded, it is because they are unhelpful and therefore superfluous and a waste of time."[35] It is only those opinions that are "so fundamentally unsupported that it can offer no assistance to the jury" that must be excluded.[36]

The court's role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system.[37] As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[38] Moreover, the Fifth Circuit has held that, in determining the admissibility of expert testimony, a district court must defer to "the jury's role as the proper arbiter of disputes between conflicting opinions." "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[39]

---

[34] FRE 702 Advisory Committee Notes, 2000 Amendments, (*citing United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996)).
[35] FRE 702 Advisory Committee Notes (*citing* 7 Wigmore § 1918).
[36] *Edmonds v. Illinois Cent. Gulf R. Co.*, 910 F.2d 1284 (5th Cir. 1990).
[37] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).
[38] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987).
[39] *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (*citing Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir.1987)).

### B. Mr. Perkin is Qualified to Render Opinions Regarding the Work Performed on the MONCLA 103 at the time of Plaintiff's Injury.

Defendant's Motion summarily states that Mr. Perkin is unqualified to render opinions about operations on a workover oil rig. This assertion is untrue and Mr. Perkin's CV alone belies that assertion. Moncla has stated that Mr. Perkin has not operated or worked on oil and gas wells, nor has he worked on a workover rig. However, in addition to the many years as a mechanical engineering expert who has worked on well servicing case, oil and gas rig operation cases, and oil production service cases, Mr. Perkin indeed has real-world experience on rigs. He has worked as a roughneck, a derrickman, a serviceman, a field engineer, and an engineering manager on onshore and offshore oil rigs.[40] This includes workover rigs like the kind on which Mr. Compton was working at the time he was injured.

Many of the questions about the specifics of Mr. Perkin's work history and knowledge of the specific operations being performed at the time of Mr. Compton's injury are best addressed through cross-examination in his deposition or in his qualification at trial. Moncla has not yet deposed Mr. Perkin in this case, and many of these questions Moncla seems to have (despite having retained Mr. Perkin itself several times before) are much better addressed through more detailed questioning. A simple viewing of Mr. Perkin's CV shows that he is quite qualified to render opinions in this case. This argument by Moncla should fail.

### C. Mr. Perkin's Opinions are Reliable.

Mr. Perkin was provided with the testimony given in this case, documents produced which were relevant to the operations being performed at the time of Mr. Compton's injury, and spoke with Mr. Compton himself about what he recalled about the operations. He then applied the information with which he was provided to his many years of experience and knowledge in the

[40] Ex. 7.

offshore drilling industry, and arrived at his opinions on what may have occurred and how it could have been prevented. That is evident throughout his report.

In its motion, Moncla seems to complain that Mr. Perkin's report contains too many drawings or photographs, or that they are irrelevant to his opinions. In fact, several of the drawings within his report are taken from Plaintiff himself or exhibits to depositions taken in this case. There are also several photographs and drawings of similar operations and equipment to be used, as this is a task with which very few persons in the general public have any knowledge. These photographs are contained within his report because Mr. Perkin has determined that these are helpful to explain the work performed when Mr. Compton was injured, the way that work should be performed, and the way the equipment should be set up, some or all of which may be shown to the jury to explain the work at trial.

Plaintiff notes that Moncla retained its own expert on this matter, Steven Goerner, who has issued his own report on the events on the Moncla 103 which are at issue in this case. Plaintiff also notes that, as set forth in his own report, Mr. Goerner performed the same type of analysis and methodology in arriving at his opinions as did Mr. Perkin.[41] Neither of the experts were on the rig at the time of the failure, or shortly thereafter, so must rely on documents and testimony, as well as their own years of experience and knowledge, to arrive at their opinions.

There was no way for Mr. Perkin to inspect what actually failed on the cat line, as Moncla's workers simply put it right back into service hours after Mr. Compton was seriously injured.[42] No parts from the cat line were saved, and the part which originally failed, the cotter pin, has been

[41] Ex. J to Moncla's Motion, at R.Doc. 46-11.
[42] Lopez Dep. at pp. 33-34.

lost. Further, no photographs were taken of the cat line or the area of the accident immediately after it occurred, and there were no surveillance cameras on the rig.[43]

At its base, Moncla's objections to Mr. Perkin's opinions are objections about the information on which Mr. Perkin based his opinion. However, questions aimed at the bases and sources of an expert's opinion go to the weight of the opinion, not its admissibility. This includes disputes as to the factual basis of an expert opinion.[44] Merely disagreeing with the facts that an expert relied on is not grounds for exclusion.[45]

While Moncla states that Mr. Perkin's report lists equipment and procedures which were not in use at the time of Mr. Compton's injury, it fails to cite to any evidence or documents which actually dispute that. In fact, much of Moncla's motion lacks citations to any evidence or testimony in this case, and rather relies on what their own expert, Mr. Goerner, wrote in his report about Mr. Perkin's opinions. Mr. Perkin has not yet been deposed by Moncla, and the specific complaints about the equipment at issue can be better addressed through questions directed to Mr. Perkin.

The opinions which Moncla claims are "unhelpful" are simply those which contradict the conclusion it wishes to see in the case. While Moncla asserted that Mr. Perkin failed to explain how he reached his conclusions, Mr. Perkin specifically went through his methodology throughout his report. There is no certainty about how this accident occurred. The crew summarily decided that the cat line failed, did not conduct any detailed investigation on the cause of the failure, other than seeing a broken cotter pin and replacing it, and then putting the entire apparatus back into service a few short hours after Mr. Compton was severely injured. Thus, in looking at all of the evidence, Mr. Perkin determined, based on his own years of experience, that there were several

[43] Edmond Dep. at pp. 72-73.
[44] *Marin v. Falgout Offshore, LLC*, 2011 WL 6000848 (E.D.La. 2011).
[45] *Id*.

things which could have failed or been improperly inspected or set up which would have led to this accident. This is not a "failure to explain how he reached his conclusions."

There are many facts in dispute in this case, including how specifically this accident happened, where the cat line actually failed, and whether Mr. Compton should have, or even would have, been solely responsible for inspecting the cat line at the point at which it failed. Moncla concludes that the accident which occurred was the fault of Mr. Compton, without addressing many of the underlying issues of the operations taking place at the time of the incident, including how the power swivel was positioned, where the cat line actually failed, and how often all parts of the cat line were given a proper inspection. However, Mr. Compton's role in the accident is very clearly in dispute. The jury will need to hear about the work that the crew was performing, how all of the equipment was set up on the rig that day, why it was set in that manner, who made the decision to set it in that manner, and how that work should be performed under proper industry standards. That is where the value of Mr. Perkin's testimony lies. The jury will then ultimately determine whether, along with the other testimony, Mr. Perkin's opinions, or those of Mr. Goerner, who utilized the same methodology, are more helpful to it in rendering a liability decision.

Courts are "concerned with screening unreliable methodologies, not judging conclusions."[46] A party can cross-examine an expert regarding the facts and whether they fit the given expert opinion.[47] This same argument was made by a defendant in *Delta Towing, LLC v. Justrabo.* The court there reiterated the long-standing rule that questions related to the bases and sources of an expert's opinion affect the weight to be given the opinion and not its admissibility.[48]

---

[46] *Marin, supra.*
[47] *Id.*
[48] *Delta Towing, LLC v. Justrabo*, 2009 WL 3763868 (E.D.La. 2009).

"It is 'the role of the adversarial system, not the court, to highlight weak evidence'" and challenges related to the basis of Mr. Perkin's opinions are best suited for cross-examination.[49]

**D. Mr. Perkin's Opinions are Relevant.**

This is not a case involving simple actions which all persons are more or less familiar. The vast majority of potential jurors likely do not know what a power swivel is or does, what a cat line or air hoist is and how it works, or how these operations should work on an oil rig. Mr. Perkin's proposed testimony will certainly help the jury understand facts which are well outside of their common or everyday knowledge. What Moncla complaints of in Mr. Perkin's report, i.e., drawings of similar operations and typical equipment used, are all things that he can or will use to help the jury understand these operations so that it can render its findings on the liability of the parties for the accident.

It is clear that these are not operations requiring only a "common sense" approach to understanding. Indeed, Defendant has retained its own expert to provide opinions on these operations. Moncla briefly attempts to argue that Mr. Perkin's opinions are not relevant simply because its own expert did not agree with them, which is far from any acceptable basis to strike an expert's opinion. In the four pages of Mr. Goerner's report which purport to show the ways in which Mr. Perkin's report is "irrelevant," two of those pages just contain Mr. Perkin's drawings, and the other two simply state that the equipment shown in those drawings was not being used, without any evidence to support Mr. Goerner's own statements.

As neither Mr. Perkin nor Mr. Goerner were onsite at the time of the accident, they must rely on the documents produced, the testimony of those who were on site, and their own knowledge of the type work that was being performed at the time of the accident. Both of them must assume

---

[49] *Id*. (*citing Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004)).

what happened, and how the power swivel was set up in such a manner that caused the cat line to fail. Mr. Goerner's opinions are not concrete or absolutes. While he does not agree with some of the things Mr. Compton told Mr. Perkin about the setup of the equipment before the accident occurred, that is again just a complaint about the bases of Mr. Perkin's opinions. Plaintiff avers that Mr. Perkin's testimony is very relevant and will be quite helpful to the jurors at the trial of this matter.

**E. Other Decisions Excluding Mr. Perkin are Irrelevant.**

Moncla attempts to undermine Mr. Perkin's opinions in this case by introducing previous cases in which he was excluded. Orders rendered in other cases simply have no relevance to this case, and those orders serve only to prejudice Mr. Perkin. In *McDowell v. Atlantic Sounding, Co.*, 2012 WL 1656262 (E.D. La. 2012), the defendant relied on decisions excluding an expert in other cases in support of its argument to exclude an expert. The court properly found that the defendant's "attempt to hang their hat on the fact that [the expert] has been excluded from testifying as an expert in previous cases" was misplaced.[50] The court went on to state:

> The admissibility of an expert opinion is taken on a case by case basis, considering the facts of each individual case, the proffered expert reports and opinions, and the issue of whether those reports will assist the trier of fact in its resolution of issues particular to that individual case. **Here, the Court is only concerned with the reports as they apply to the facts of the case before it. Whether plaintiff's experts have been admitted before (or not) does not influence this decision.**[51]

Likewise, evidence of other cases where Mr. Perkin may have been excluded for any reason is simply irrelevant in this case. The trier of fact should not be influenced by whether or not an expert was admitted in another case. Indeed, Plaintiff could cite to several cases in which Mr.

[50] *McDowell*, at *3, n. 6
[51] *Id*. [Emphasis added].

Perkin's testimony was accepted as helpful, as it explained industry standards and safety issues associated with work and equipment which is outside of the usual knowledge of a lay juror. *See Woods v. Seadrill Americas, Inc.* 2017 WL 8293244 (E.D. La. 2017) (allowing Mr. Perkin to testify about machinery used, drillship operations, and applicable regulations, as his opinions were reliable and would help the jury understand drillship operations); *Perforaciones Maritimas Mexicanas S.A. v. Seacor Holdings, Inc.*, 2008 WL 11394261 (S.D. Tex. 2008) (noting that, while Mr. Perkin could not definitively testify about what had caused cracks in a spud can, he held the requisite qualifications and ability to testify about what could have caused them and what could have been done to identify those cracks before the incident).

Further, Moncla's list in its Exhibit I is also somewhat misleading. For example, its excerpts from *Cooley v. Denbury Onshore, L.L.C.*, 2009 WL 4034885 (E.D. Miss) leave out all of the areas in which Mr. Perkin *was* deemed qualified and able to render opinions in that case: "[P]laintiff will be allowed to offer Perkin's testimony generally regarding the methods used to secure the pumping unit's walking beam assembly in place while the failed gear box was being replaced, regarding what was involved in "reassembling" the pumping unit to return it to operation, and regarding the hazards posed by the methods used, and specifically as to the alleged hazard that existed when the crane was unhooked from the beam." This is far from the wholesale exclusion that Moncla attempts to convey throughout its list. The excerpt from *Espana v. Pioneer Well Servs.*, 2012 WL 12110267 (W.D. La. 2012) was similarly misleading, as the vast majority of Mr. Perkin's opinions were allowed in that case. Moncla's list further cites to deposition testimony taken in other cases, which has no bearing on this matter. Plaintiff avers that this argument by Moncla has no bearing on the issues present in this case, and that this factor should give no weight to whether Mr. Perkin is qualified to render opinions at trial here.

## CONCLUSION

For all of the reasons set forth herein, Plaintiff respectfully requests that this Court deny the motion filed by Moncla to exclude the testimony of Mr. Perkin from trial. Mr. Perkin's opinions clearly meet the requirements of Federal Rule of Civil Procedure 702 and the *Daubert* standards. He is qualified to render opinions in this case and his testimony will certainly assist the jury. Any issues defendant may have with Mr. Perkin's opinions and testimony are more properly addressed via cross examination during trial. For all such reasons defendant's Motion to *in Limine* to Exclude Gregg Perkin should be denied. In the alternative, if this Honorable Court is inclined to find that the issues involved in this case are such that expert testimony is not needed or that such testimony is unreliable due to improper methodology, Plaintiff respectfully requests that Defendant also not be allowed to present expert testimony on liability and safety issues, as he opines on the same issues and uses the same methodology to reach his conclusions.

Respectfully Submitted,

*s/Megan C. Misko*

TIMOTHY J. YOUNG (22677)
TAMMY D. HARRIS (29896)
MEGAN C. MISKO (29803)
JOSEPH B. MARINO, III (29966)
THE YOUNG FIRM
400 Poydras Street, Suite 2090
New Orleans, Louisiana 70130
Telephone: (504) 680-4100
Facsimile: (504) 680-4101