UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES COMPTON | CIVIL ACTION |
| VERSUS | NO. 17-2258 |
| MONCLA COMPANIES, LLC | SECTION: M (4) |

**ORDER & REASONS**

Before the Court are two motions *in limine* by defendant Moncla Marine Operations, L.L.C.[1] ("Moncla") to exclude plaintiff's purported experts Gregg S. Perkin[2] and David Paulus.[3] Plaintiff James Compton responds in opposition.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying both motions.

**I.     BACKGROUND**

This matter concerns a maritime personal injury. The *Rig #103 The Gator* is a workover barge owned and/or operated by Moncla.[5] On February 29, 2016, Compton was working aboard *The Gator* as a Jones Act seaman employed by Moncla when he "experienced an accident which resulted in serious painful injuries to his head, back, neck and other parts of his body."[6] Compton's complaint does not elaborate on the circumstances of the accident, but the motions presently before the Court indicate that Compton was hit on the head by a falling object.[7] Compton alleges that Moncla's negligence and the unseaworthiness of *The Gator* caused the

---

[1] Plaintiff's amended complaint replaced the original defendant Moncla Companies, LLC with the proper defendant Moncla Marine Operations, L.L.C. R. Doc. 6.
[2] R. Doc. 46.
[3] R. Doc. 47.
[4] R. Docs. 51 & 52.
[5] R. Doc. 1 at 2.
[6] *Id.*
[7] *See* R. Docs. 46-1, 47-1, 51 & 52.

accident.[8] Compton also alleges that he is entitled to maintenance and cure, along with attorney's fees and punitive damages for Moncla's failure to make those payments.[9]

At trial, Compton intends to offer Gregg S. Perkin, P.E., as an expert in marine safety to aid the jury in determining the cause of the accident.[10] Compton also intends to present David Paulus, Ph.D., as an expert in engineering to discuss the forces involved when a falling object hits a person.[11] Moncla filed the instant motions *in limine* arguing that Perkin's and Paulus's testimony should be excluded for failure to meet the *Daubert* standard.

## II. LAW & ANALYSIS

### A. *Daubert* Standard

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[8] R. Doc. 1 at 2-3.
[9] *Id.* at 3-5.
[10] R. Doc. 51-1.
[11] R. Doc. 52-1.

Fed. R. Evid. 702.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant. *Daubert*, 508 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors or requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 156 (5th Cir. 2003). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make factual determinations reserved for the trier of

fact." *Highland Capital Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. *Rushing v. Kan. City S. Ry.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002). A witness qualified as an expert is not strictly confined to his area of practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion. *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018) (quotations and citations omitted).

B. **Moncla's Motion *In Limine* to Exclude Perkin**

Perkin is a professional mechanical engineer with over 48 years of experience.[12] He holds himself out as an expert in the safety of oil-and-gas facilities.[13] Perkin has been an instructor on many topics related to oil drilling and has worked in the offshore and onshore drilling industry.[14] Further, he is a member of numerous professional associations related to petroleum engineering.[15] Compton hired Perkin to testify as a safety expert. In his report, Perkin explains how he thinks the accident happened based on his review of the evidence and his engineering expertise, and opines that: (1) Compton was conducting his job duties properly; (2) poor maintenance and inspection of the catline and its rigging, improper make-up of the catline's rigging equipment, and the state of the catline or its components being in a bind or being over-

---

[12] R. Doc. 46-6 at 1.
[13] *Id.*
[14] *Id.* at 1-2.
[15] *Id.* at 3.

4

pulled could have caused the accident; (3) Moncla should have ensured that its equipment was safe and failed to do so; (4) Moncla should have conducted monthly inspections to ensure that the hoisting and rigging lines and equipment were properly configured and fit for their purposes; and (5) Moncla could have used a simpler rigging system.[16]

Moncla argues that Perkin should not be permitted to testify as an expert in maritime safety because his opinions have not been tested or subjected to peer review, contain conclusory allegations that are not supported by methodology or reasoning, and fail to identify the particular action or inaction by Moncla that is being criticized.[17] Moncla also argues that Perkin has insufficient experience to testify as an expert in drilling safety and that this Court should exclude his testimony because other courts have.[18]

Compton argues that Perkin is qualified to testify as a safety expert because he has experience working in the oil drilling industry and can explain the environment and operations to the jury.[19] Compton contends that Perkin's testimony is relevant, reliable, and necessary because nobody knows or has testified to exactly how the accident occurred and Perkin can use his expertise to explain several theories of what likely happened.[20] Further, Compton argues that this Court should not exclude Perkin simply because other courts have excluded some of his testimony, as each and every case must be viewed independently and on its own facts.[21]

Perkin's education and experience appear to qualify him to testify as an expert in drilling safety. Compton notes that Moncla has not yet deposed Perkin, so the Court is not in a position to make a fully-informed ruling on his qualifications at this juncture. Moncla can traverse his

---

[16] R. Doc. 46-5 at 1-39.
[17] R. Doc. 46-1 at 7.
[18] *Id.* at 8-10.
[19] R. Doc. 51 at 8 & 12-13.
[20] *Id.* at 8-13.
[21] *Id.* at 13-14.

qualifications at trial, and the Court will be able to make a conclusive determination at that time. Moreover, without the benefit of deposition testimony, the Court cannot now assess fully whether each of Perkin's opinions is relevant and reliable, although they appear to be. Significantly, Perkin does employ the same methodology used by Moncla's own expert. To the extent Moncla questions the content of and support for the opinions or reasoning set out in Perkin's report, Moncla will have an opportunity to explore these issues at trial through cross-examination of Perkin and the presentation of countervailing testimony. Moreover, "questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its *admissibility* and should be left for the jury's consideration." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (emphasis in original; citation omitted). Further, whether Perkin was excluded in another, unrelated case, has no bearing on whether his testimony in *this* case is admissible. As such, Moncla's motion to exclude Perkin is DENIED.

  c.  **Moncla's Motion *In Limine* to Exclude Paulus**

Paulus, who has a Ph.D. in mechanical engineering and many years of experience working in the field with an emphasis on biomechanical analysis, was hired by Compton as an expert in engineering.[22] Paulus inspected Compton's hard hat and saw that it had an indentation where the falling object hit Compton.[23] In rendering his opinions, Paulus assumed that the dent in the hard hat must have popped out because Compton had a large cut on his head after the accident.[24] Paulus conducted tests with a dummy, a hard hat of the same make as Compton's, and objects of different weights, dropped from different heights, to determine the likely force

---

[22] R. Doc. 47-2.
[23] *Id.* at 6-7.
[24] *Id.* at 6-8.

6

with which the object struck Compton.[25] After conducting his investigations, Paulus opined "to a reasonable degree of engineering certainty":

1. Based on the testing [he] performed, the hard hats were able to be significantly indented from a falling weight without cracking, and such indentations may "pop out" after impact with negligible evidence from the indentation. Thus, the Moncla hard hat presented as evidence may have also undergone significant indentation during impact.

2. Based on testimony by Mr. Compton and a report and conversation with Professional Engineer Gregg Perkin, the 2.5 lb crudely fabricated steel connector presented as evidence may have only been part of the mass that fell on Mr. Compton.

3. Based on engineering calculations, a 4 lb weight falling 20 ft onto a person's head while wearing a hard hat would more likely than not have sufficient energy to cause a head acceleration of approximately 95 g's.

4. In light of the three previously stated opinions, it is more likely than not that the significant and life altering injuries Mr. Compton incurred were caused by a mass falling on his hard hat while working for Moncla Marine Companies.[26]

Although Moncla concedes that Paulus is qualified to testify as an expert in engineering, it argues that the Court should exclude Paulus's testimony because (1) he did not test the hard hat Compton was wearing, (2) the 2.5 lb. steel connector used in Paulus's tests was not what hit Compton, (3) Paulus does not know what hit Compton or its weight, and (4) the dummy may not have been positioned correctly.[27] Moncla also argues that Paulus did not review any medical records and is not qualified to testify as to medical causation.[28]

In opposition, Compton argues that Paulus's opinions are relevant and reliable because he was calculating the forces that would cause a hard hat to be dented when an object is dropped on

---

[25] *Id.* at 6-16.
[26] *Id.* at 17.
[27] R. Doc. 47-1 at 3-7.
[28] *Id.* at 4 & 6.

7

it.[29] Compton argues that Paulus did not test Compton's actual hard hat, but rather another one of the same make and model, so as to preserve Compton's hard hat intact as evidence for the jury to observe at trial.[30] Also, Compton contends that Moncla is to blame for Paulus not having the actual object that hit Compton (said to be a counterweight) because Moncla's employees failed to preserve this evidence after the accident.[31] Finally, Compton concedes that Paulus is not qualified to offer opinions on medical causation and will not do so.[32]

Paulus's education and experience as a mechanical engineer qualify him to testify as an expert engineer. His opinions concerning indentation of the hard hat, the weight of the object involved, and the force of the blow to Compton's head are well within the ambit of his expertise and are relevant and reliable. To the extent Moncla questions otherwise the content of and support for Paulus's report, including the bases and sources of his opinions, Moncla can address its concerns at trial through cross-examination of Paulus and the presentation of countervailing testimony, as those issues go to the weight, not the admissibility, of Paulus's testimony. *See Primrose Operating*, 382 F.3d at 562. As such, Moncla's motion to exclude Paulus is DENIED.

### III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Moncla's motion *in limine* to exclude the expert testimony of Perkin (R. Doc. 46) is DENIED.

IT IS FURTHER ORDERED that Moncla's motion *in limine* to exclude the expert testimony of Paulus (R. Doc. 47) is DENIED.

---

[29] R. Doc. 52 at 8-11.
[30] *Id.*
[31] *Id.*
[32] *Id.* at 11.

New Orleans, Louisiana, this 2nd day of April, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE